IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SIERRA CLUB,<br><br>         Plaintiff,<br><br>vs.<br><br>FRANKLIN COUNTY POWER OF ILLINOIS, LLC f/k/a EnviroPower of Illinois, LLC; ENVIROPOWER, LLC; and KHANJEE HOLDING (US) INC.,<br><br>         Defendants. | Case No. 05-cv-4095-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Sierra Club's Motion for the Imposition of a Fine and for an Award of Attorneys' Fees and Costs (Doc. 148). Defendants Franklin County Power of Illinois, LLC ("FCP"), EnviroPower, LLC ("EnviroPower") and Khanjee Holding (US) Inc. ("Khanjee") have responded to the motion (Doc. 149), and the plaintiff has replied to that response (Doc. 155).

The Sierra Club asks for the imposition of a fine pursuant to § 304(a) and (d) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a) and (g), after the Court granted summary judgment in its favor on its claim that the defendants had violated the CAA, 42 U.S.C. § 7475(a), by proposing to construct a power plant ("Plant") in Benton, Illinois, without the required permit ("PSD Permit"). Specifically, the Court found that the PSD Permit obtained in July 2001 had automatically expired because the defendants had not begun a continuous program of actual on-site construction of the Plant or entered into a binding agreement to undertake a program of actual construction of the Plant within 18 months of receipt of the PSD Permit. The Court further found that, alternatively, the PSD Permit automatically expired because there was more than an 18-month hiatus in

construction activity. Detailed facts regarding this dispute are contained in the Court's October 17, 2006, order granting summary judgment for the Sierra Club (Doc. 128), and the Court need not repeat those details in this order.

## I.     Civil Penalty

Where a party prevails in a CAA suit, the Court is authorized in its discretion to "apply appropriate civil penalties." 42 U.S.C. § 7604(a). That penalty can take the form of a fine to be deposited in the United States Treasury to finance clean air compliance and enforcement activities. 42 U.S.C. § 7604(g)(1). Alternatively, the Court has the discretion to order a civil penalty of up to $100,000 to be used for beneficial mitigation projects that are consistent with the CAA and that enhance the public health or the environment. 42 U.S.C. § 7604(g)(2). The Court may assess a penalty for each day of a violation, 42 U.S.C. § 7413(e)(2), which is limited by regulation. For days prior to March 15, 2004, the maximum daily fine is $27,500 and for days from March 16, 2004, to and including January 12, 2009, the maximum daily fine is $32,500. 40 C.F.R. § 19.4.

> The Court must consider in determining the appropriate penalty:
>
> (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence . . ., payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

42 U.S.C. § 7413(e)(1). "In considering fines under the [CAA], courts generally presume that the maximum penalty should be imposed," *United States v. B&W Inv. Props.*, 38 F.3d 362, 368 (7th Cir. 1994), and leaves to the Court's discretion how to apply any mitigating factors.

The Sierra Club asserts that a multi-million dollar fine payable to the United States Treasury would be appropriate but instead asks the Court to exercise its discretion to order a

penalty of $100,000 to be paid to the Jackson-Union County chapter of Habitat for Humanity for use in its Better Built Program. The Better Built Program uses energy efficient and environmentally friendly home-building practices to construct affordable homes for families.

      The Sierra Club is correct that the maximum penalty the Court could impose under 42 U.S.C. § 7604(g)(1) is substantial. In its summary judgment order, the Court found the defendants' PSD permit automatically expired on either January 3 or February 10, 2003, depending on whether several extensions of the 18-month period for commencement of construction applied. While the Court expressed doubts that they did, it did not decide the question because it was not material to the outcome of the motion. Here, the question is material to the maximum fine available. However, the Sierra Club does not object to using the later expiration date. Giving the defendants the benefit of their alleged extensions, the Court finds – for the purpose of imposing a penalty only – that the PSD permit expired February 10, 2003. Further, the Court finds that, from the date the permit expired to the Court's October 17, 2006, injunction prohibiting the defendants from actually constructing the Plant in the absence of a valid PSD permit, the defendants have proposed to construct the Plant and have actively worked toward that goal, although not by commencing actual on-site construction. Those dates yield the following maximum fine:

| Dates | Days | Fine | Total |
| --- | --- | --- | --- |
| February 10, 2003, to March 15, 2004 | 400 | $27,500 | $11,000,000 |
| March 16, 2004, to October 17, 2006 | 945 | $32,500 | $30,712,500 |
| **Grand Total** | | | **$41,712,500** |

The defendants do not object to this calculation of the maximum potential fine and have therefore waived any objection to the method of calculation. Thus, the Court begins with the presumption

that it should impose a penalty of $41,712,500 and examines the relevant circumstances, including the factors listed in 42 U.S.C. § 7413(e)(1), to determine if a lower penalty is warranted.

The defendants argue they acted in good faith when they proceeded with the Plant construction after the PSD Permit expired in early 2003. The Court does not agree. A December 6, 2002, memorandum to Frank Rotondi, President and CEO of EnviroPower at the time, belies the defendants' assertion (Doc. 53-7 at 4-6). That memorandum clearly recognized the PSD Permit would expire on January 3, 2003, absent commencement of actual construction. It further acknowledged that the Construction Memorandum in existence at that time was inadequate to prevent the PSD Permit from automatically expiring and that construction activities that would avert permit expiration must have involved more than merely digging a hole in the ground. This memorandum is evidence of the defendants' lack of good faith in proceeding with Plant construction after January 3, 2003, and the defendants have presented no convincing evidence to the contrary. The defendants are sophisticated parties who were well able to recognize the time limits of their PSD Permit as well as the activities that would have averted its automatic expiration. Furthermore, an Illinois Environmental Protection Agency representative's finding in September 2004 that actual construction had commenced at that time should not and would not have misled the defendants into thinking their belated construction efforts were proper in light of the earlier automatic expiration of the permit in January 2003 (or February 2003, as the Court assumes for the purposes of this motion ), a phenomenon of which they were clearly aware.

The defendants also argue that they have no financial gain as a result of their violation. In fact, they assert they have spent large sums of money to prepare to construct the plant and may be liable to Black & Veach for additional and larger sums because they failed to consummate an EPC

contract and move forward with the project. The defendants claim they have lost or will lose $100 million as a result of the failure to complete the project.

Additionally, the defendants note that FCP has no history of CAA violations and has maintained a good working relationship with governmental agencies charged with environmental protection. The defendants do not state whether EnviroPower or Khanjee has a similar record.

Finally, the Court is mindful that the threatened environmental harm from the defendants' building the Plant without a PSD Permit did not happen because the Plant was not completed and never emitted any pollutants. Nevertheless, the violation continued for more than three years. There is no evidence before the Court about the size of the defendants' businesses or the economic impact of the proposed penalty on their businesses, although the Court takes note that the defendants must be of some heft if they were prepared to enter into the Construction Memorandum where the potential penalty for failing to consummate an EPC was $78 million.

Indeed, the Sierra Club believes appropriate a lesser penalty of $100,000 under 42 U.S.C. § 7604(g)(2) instead of a multi-million dollar fine under 42 U.S.C. § 7604(g)(1). Such a penalty is imminently reasonable when compared to the estimated total cost of constructing the Plant – somewhere in the neighborhood of $600 million – and the magnitude of the $41.7 million fine available under 42 U.S.C. § 7604(g)(1). Considering all of the foregoing factors, the Court agrees that a $100,000 penalty under 42 U.S.C. § 7604(g)(2) – which is 0.2% of the potential penalty – will appropriately penalize the defendants for their wrongful conduct, deter them and others from committing future violations and serve the interests of justice.

The defendants argue that Khanjee should not be liable for a penalty because it was not involved in the Plant construction activities at the time the PSD Permit expired. First, one of the

defendants' prior filings indicates Khanjee began to serve as the lead developer for the Plant construction project in mid 2002, although it may not have signed a contract manifesting this relationship until March 2003 (Doc. 111 at 2). Thus, it was involved prior to the expiration of the PSD Permit. More importantly, however, Khanjee's argument misses the mark. It is not the expiration of the permit that renders a penalty appropriate but the continuation of construction activities after the permit has expired. The evidence in the Court file reflects an intimate working relationship between the defendants – all sophisticated parties – regarding the construction of the Plant. It is inconceivable in light of this evidence that Khanjee was not aware of the PSD Permit's expiration in early 2003. It is clear that Khanjee was instrumental to, and in fact led, the efforts to construct the Plant after the PSD Permit expired regardless of whether it was responsible for the expiration of the permit. For this reason, Khanjee is liable for a civil penalty.

The defendants further argue that no penalty is warranted because, in the case of threatened injuries, permanent injunctive relief is the only appropriate remedy. In support of their position, they cite the dissenting opinion in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 204 (2000) (Scalia, J., dissenting) ("[R]elief against prospective harm is traditionally afforded by way of an injunction, the scope of which is limited by the scope of the threatened injury."), which is not binding or persuasive to this Court. In fact, the majority opinion in *Friends of the Earth* found that the Court had discretion under the Clean Water Act, 33 U.S.C. § 1365(a), to impose a monetary penalty if the penalty would deter future violations. *Id.* at 185. This holding with respect to the Clean Water Act is consistent with the monetary penalty the Court imposes in this case. Here, in light of the defendants' lack of good faith when they continued their efforts to construct the Plant after they recognized the PSD Permit would expire in January 2003

and where it is not absolutely clear that the defendants will not violate the CAA in the future, the Court believes a modest monetary penalty is necessary in addition to injunctive relief to deter future violations. The fact that the injunction may be the more effective of the two means of ensuring compliance with the CAA is reflected in the substantial reduction of the maximum potential fine. Nevertheless, both a penalty and an injunction are necessary to forestall future violations.

Furthermore, it is interesting to note that the defendants' position is diametrically opposed to their position in their appeal of the Court's order granting permanent injunctive relief. In that appeal, the Court of Appeals noted, "First, the defendants claim the district court lacked jurisdiction to grant an injunction because, according to them, a civil penalty is the sole remedy for the citizen suit here." *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 934-35 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2866 (2009). The Court of Appeals rejected the defendants' argument, but confirmed that appropriate civil penalties are indeed available in cases like the one at bar. *Id.* at 935. The fact that the threatened injury to the environment that would have been caused by construction of the Plant without a PSD Permit never came to fruition is relevant to the magnitude of the penalty but not to its availability. As discussed above, the Court has duly considered that factor and has substantially reduced the penalty partly as a result of the lack of actual injury to the environment.

The defendants also challenge the constitutionality of a penalty in light of the commitment of environmental protection enforcement to the Executive Branch. Citing Justice Kennedy's concurring opinion in *Friends of the Earth*, the defendants imply that penalties in citizen suits under the CAA may usurp the Executive Branch's law enforcement role. *Friends of the Earth*, 528

U.S. at 197 (Kennedy, J., concurring). While Justice Kennedy notes the possibility of such a violation of separation of powers principles, his one-paragraph opinion in no way states or implies that Court-imposed penalties under the CAA are constitutionally impermissible. In fact, he concurs with the imposition of the fine in that case, albeit under the Clean Water Act. The defendants have not convinced the Court that there is any constitutional problem with a penalty in this case.[1]

The Court does not believe, however, that the entire penalty should be payable to the organization the Sierra Club suggests. The Sierra Club asks that the entire penalty be used for the Jackson-Union County chapter of Habitat for Humanity for use in its Better Built Program. The Court agrees that building energy efficient homes that will require less power, thus requiring less power generation and less air pollutants associated with such generation, is consistent with the CAA and enhances the public health and the quality of the environment. 42 U.S.C. § 7604(g)(2). One of the Sierra Club members upon whom standing was based in this lawsuit – Barb McKasson – resides in Jackson County and has established a risk to residents of Jackson County like her from

---

[1] In passing, the defendants complain of the page limit the Court placed on its response brief. The Court believes the ten-page limit was appropriate and notes that the defendants wasted some of that space on arguments immaterial to the matters in issue. For example, they harp on the Sierra Club's announced goal of opposing all coal-burning power plants regardless of the cleanliness of their emissions. They also discuss alleged public statements by the Sierra Club regarding Khanjee's national origin. The Sierra Club's motivation in pursuing this lawsuit and its beliefs about Khanjee's nationality are irrelevant to this case, which is solely concerned with whether the defendants violated the CAA and, once a violation was determined, the appropriate remedy. If the defendants did not have enough pages to make their relevant arguments, it is because of their own drafting decisions. Furthermore, had they believed they needed more space, they were free to ask the Court to enlarge the limit. They never made such a request.

the construction of the Plant without a PSD Permit. The Jackson-Union County chapter is a worthy recipient of the penalty to be assessed against the defendants.

The Court is mindful, however, that the defendants had proposed to build the Plant in Franklin County and that its citizens and businesses would also have experienced excessive pollution if the Plant had been built there without a PSD Permit. Franklin County has its own chapter of Habitat for Humanity, although that group does not yet participate in the Better Built Program. Conferring a benefit on Franklin County through energy efficient home-building is an appropriate use of penalty funds in this case. For this reason, the Court will split the award between the Jackson-Union County and the Franklin County chapters of Habitat for Humanity. The Court will order the defendants to pay $50,000 to the Jackson-Union County chapter for use in its Better Built Program and to pay $50,000 to the Franklin County chapter for use in establishing its own Better Built Program and, if the program has already been established at the time the penalty is paid, for use in that program. Before making this ruling, the Court has consulted with the Environmental Protection Agency's administrator through the office of Cheryl Newton, Director of EPA Region 5's Air and Radiation Division, as required by 42 U.S.C. § 7604(g)(2).

## II.     Attorney's Fees and Costs

### A.     Appropriateness of Fee/Cost Award

The Court also has discretion to award costs of the litigation, including reasonable attorney's and witness fees, whenever appropriate in a CAA lawsuit. *See* 42 U.S.C. § 7604(d). An award is appropriate if the party seeking fees obtained some success on the merits. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 (1983). In enacting this fee-shifting provision, Congress intended Courts to award costs and attorney's fees to parties when they perform a public service by bringing

CAA enforcement actions where the government does not.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986)**.**

An award of fees and costs is appropriate in this case.  The Sierra Club prevailed in this litigation and clearly performed a public service by forcing the defendants to stop construction of the Plant until they have a required permit regulating its future emissions.  The government failed to recognize the violation and take action to stop the construction, and the Sierra Club stepped in, as envisioned by Congress when it enacted the CAA, to protect the public from the unapproved levels of harmful emissions that would have resulted from operation of the Plant.

The defendants argue the Court should not award the Sierra Club its fees and costs because it improperly stepped in to enforce the CAA while government agencies were still investigating the defendants' compliance.  This argument has no merit.  It is true that Congress did not intend citizen suits to supplant government legal action.  *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) **(**Clean Water Act).  Accordingly, it gave federal and state governments the power to foreclose citizen suits by commencing and diligently pursuing their own civil actions before commencement of a citizen suit and to participate in citizen suits by intervening as a matter of right.  *See* 42 U.S.C. § 7604(b)(1)(B).  However, Congress *did* intend to allow citizen suits to supplement government enforcement of the CAA where the government fails to prosecute violators.  *See Delaware Valley*, 478 U.S. at 560.  Where the federal and state governments have notice that a citizen is contemplating a suit and each fails to step in and pursue its own suit, the citizen is free to commence his own action, and if he prevails in the public interest, an award of fees and costs is consistent with the CAA.  That is what happened in this case, and an award of fees and costs is appropriate.

The defendants also argue the Court should not award fees and costs because the Sierra Club profited from this lawsuit. It asserts the Sierra Club used its victory in this case to solicit donations and achieve a "windfall." In support of their position, the defendants cite *Western States Petroleum Ass'n v. EPA*, 87 F.3d 280 (9th Cir. 1996), in which the Ninth Circuit Court of Appeals held that the CAA's fee-shifting provision was not intended to assist those "who are financially able to and would have litigated regardless of any potential for a fee award, have not contributed substantially to the goals of the Clean Air Act." *Id.* at 286. *Western States* is distinguishable from the case at bar. Here, the Sierra Club did not receive any financial benefit directly related to this lawsuit. The type of financial gain to which the defendants refer – increased charitable donations – are collateral benefits of the sort not contemplated or addressed by the *Western States* court. Furthermore, as stated above, the Sierra Club clearly benefitted the public interest in accomplishing the goals of the CAA by bringing this lawsuit, unlike the plaintiffs in *Western States* whose concern was not clean air but their own financial gain.

B.  Calculation of Award

The Court uses the lodestar method of calculating attorney's fees. Using that method, the Court begins by multiplying the number of hours the attorney reasonably expended on the litigation by a reasonable hourly rate. *Delaware Valley*, 478 U.S. at 564 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Mathur v. Board of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). The Court can then adjust the total amount based on various factors specific to the litigation, including but not limited to the experience, reputation and ability of the attorney, the length of her relationship with the client, and the "undesirability" of the case. *Mathur*, 317 F.3d at 742 & n. 1; *Spellan v. Board of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995).

The Sierra Club asks the Court to award it attorney's fees in the amount of $ 339,327.50 ($335,935 requested in the original motion plus $3,392.50 accrued since the filing of that motion) and other expenses in the amount of $36,658.20 ($36,442.20 requested in the original motion plus $216 accrued since the filing of that motion). The defendants argue that, if a fee is awarded, the fee requested is unreasonable because it is based on an unreasonable hourly rate and includes unnecessary hours and inappropriate expenses.

      1.      <u>Hourly Rate</u>

A reasonable hourly rate is presumed to be an attorney's actual billing rate for comparable work. *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *Mathur*, 317 F.3d at 743. Indeed, "the best evidence of the market value of legal services is what people will pay for it." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004). The fee applicant bears the burden of demonstrating his market rate, but once he does this, the opposing party may attempt to convince the Court that a lower rate is justified. *Stark*, 354 F.3d at 674-75; *see Jeffboat*, 553 F.3d at 489-90. "Only if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including rates similar experienced attorneys in the community charge paying clients for similar work." *Stark*, 354 F.3d at 674-75 (omitting internal quotation marks). Where out-of-town counsel's rate exceeds that of local practitioners, the Court should still use the counsel's actual billing rate unless the Court finds that a local attorney could have done an equivalent job and there was no reason for out-of-town counsel to perform the work. *Id.*

The Sierra Club's attorney has provided an affidavit that the rates he claims – $425 per hour for lead counsel Lester A. Pines and his law partner Lee Cullen, $325 per hour for two of

Pines' other law partners, $250 per hour for his law firm's associates, $125 per hour for paralegals and $75 per hour for law clerks – are customary for the same or similar services billed to other clients for similar work.  This is sufficient to establish a presumption that the rates are reasonable. *See Jeffboat*, 553 F.3d at 490.  The Sierra Club has supported the reasonableness of these presumptive rates by an affidavit from Rebecca Whittington, who regularly practices within the Southern District of Illinois, which states that the rates used by the Sierra Club's counsel are reasonable and customary for attorneys from out of the area who practice in specialized fields and appear before this Court, and are reasonable and customary rates charged for similar work in the Sierra Club counsel's geographic area.  The Sierra Club further cites a decision from the Western District of North Carolina – also involving a citizen suit under the CAA – awarding attorney's fees for similar work in the range of $275 to $450 per hour, finding such rates were reasonable based on the education and experience of the attorneys, the complexity of the matters and the prevailing rate for environmental litigation of that type.  *See Southern Alliance for Clean Energy v. Duke Energy Carolinas, Inc.*, No. 1:08CV318 (W.D.N.C. Aug. 26, 2009).  The defendants argue that it is unreasonable to impose a flat rate for attorneys over the four-year history of this litigation.  They do not, however, suggest objectively reasonable billing rates that the Court should use.

      In light of the presumed reasonableness of the hourly rates used to calculate the lodestar and the defendants' failure to set forth any rational basis for calculating a reduced hourly rate, the Court finds the rates requested by the Sierra Club are reasonable.

       2.      <u>Hours Worked/Costs</u>

The Court can disallow hours as not reasonably expended if they are "excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004). Likewise, the Court will award other expenses if they are reasonable and necessary for use in the case.

The Sierra Club has presented an affidavit from Pines that he has reviewed the bills he presents and has eliminated what he believes to be arguably duplicative, disproportionate or ineffective hours. The defendants ask the Court to eliminate hours spent in connection with the deposition of plaintiff's witness Craig Michael Fesler. Apparently, the defendants believed the deposition, which was supposed to begin at 1 p.m. and continue indefinitely thereafter according to Fesler's subpoena from the Sierra Club counsel, would be conducted for the entire afternoon. When they arrived at the deposition, which began at 1:30, they learned Fesler was only available until 3:45, at which point he was required to leave for his own business reasons. The defendants did not have an adequate opportunity to cross-examine Fesler at the deposition. The following week, Magistrate Judge Frazier held a telephone hearing at which he determined the matter could be resolved by extending the discovery deadline to allow the defendants to subpoena Fesler for another deposition. The deposition was achieved at a later time. The defendants now ask the Court to reduce the costs and the hours the Sierra Club's counsel spent in connection with the second deposition and with the defendants' motion to strike the first deposition as an exhibit to the Sierra Club's motion for summary judgment.

This matter was resolved to the Court's satisfaction by Magistrate Judge Frazier. He did not find Sierra Club counsel was responsible for the deposition problems and considered the matter resolved so long as the deposition could be completed. The Court will not revisit those decisions.

In fact, the matter seems to be a routine discovery snag involving an uncooperative witness. Fesler's second deposition was necessary in light of his underestimation of the time necessary for the first deposition and his disregard of the defendants' first subpoena to him for a second deposition. Preparation for and attendance at the second deposition were necessary to the prosecution of this case and did not unnecessarily duplicate prior work. Furthermore, responding to the defendants' motion to strike Fesler's testimony was also necessary to the case. The motion and its response precipitated a telephone conference with Magistrate Judge Frazier that finally resolved the matter when it appeared Fesler's deposition would be completed. For these reasons, the Court will not eliminate Sierra Club counsel's costs and hours spent in connection with the second deposition and with the defendants' motion to strike the first deposition.

The defendants also ask the Court to eliminate costs and fees connected to the plaintiff's expert witness Thomas McCauley. Earlier in the case, the defendants asked the Court to exclude McCauley's testimony on the grounds that he did not satisfy the standard for admission of opinion testimony announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court found that the motion had been mooted because, even without McCauley's testimony, the Sierra Club was entitled to summary judgment. The Court therefore never made a finding regarding whether McCauley satisfied *Daubert*. The defendants encourage the Court to do so now and to exclude fees and costs associated with McCauley if the Court finds his testimony inadmissible. They cite no authority for excluding such fees and costs except the general "appropriateness" standard set forth in 42 U.S.C. § 7604(d).

That McCauley's selection as an expert and deposition were not ultimately used in connection with the summary judgment motion that disposed of this case does not render him or

15

legal work in connection with his retention unnecessary or useless to the case or inappropriate for a costs award. "The introduction of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition [for purposes of an award of costs]. . . . The proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court." *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998) (citing *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995)). The Sierra Club's counsel has provided an affidavit stating that work in connection with McCauley was reasonably necessary for use in pretrial litigation practice and trial preparation. He obviously provided services needed to litigate this case regardless of whether his services were expressly relied on in the Court's dispositive order.

Furthermore, the Court did not find McCauley's testimony inadmissible under *Daubert*, and it can think of no bigger waste of its resources than to have a *Daubert* hearing following its decision on the merits of a case for an expert whose assistance was undoubtedly useful and necessary at multiple stages of the case. Accordingly, fees and costs associated with McCauley are appropriately included in the award in this case.

For the foregoing reasons, the Court finds that the Sierra Club has demonstrated that an award of costs is appropriate, that its counsel's hourly billing rates and the hours worked are reasonable, and that other expenses were reasonable and necessary to the litigation of this case. An attorney's fee and cost award in the amount of $375,985.70 is appropriate.

### III.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the Sierra Club's Motion for the Imposition of a Fine and for an Award of Attorneys' Fees and Costs (Doc. 148);

- **IMPOSES** a penalty on the defendants jointly and severally pursuant to 42 U.S.C. § 7604(g)(2) in the total amount of $100,000 plus post-judgment interest, $50,000 of which, plus applicable interest, is payable to the Jackson-Union County, Illinois, affiliate of Habitat for Humanity for use in its Better Built Program, and $50,000 of which, plus applicable interest, is payable to the Franklin County, Illinois, affiliate of Habitat for Humanity for use in establishing the Better Built Program within its organization or, if the Better Built Program has already been established by the Franklin County, Illinois, affiliate of Habitat for Humanity at the time the penalty is paid, for use in that program;

- **AWARDS** costs, including attorney's fees and expert witness fees, against the defendants jointly and severally pursuant to 42 U.S.C. § 7604(d) and in favor of the plaintiff Sierra Club in the amount of $375,985.70; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: November 12, 2009**

s/ J. Phil Gilbert
**Judge J. Phil Gilbert**
**United States District Judge**
